This is a statutory action for fraud brought under § 6-5-101, Code of Alabama (1975). Plaintiffs recovered a verdict and judgment for $7,780. Defendant appeals. We affirm. *Page 735 
Defendant held a mortgage on a house constructed by them in 1973 for the Goodwins. The amount of the mortgage including finance charges was originally $19,944. In January 1975, Tyler purchased the house and assumed the mortgage with permission of defendant. In March 1976, plaintiffs purchased the house from Tyler and agreed with Tyler to assume defendant's mortgage. Plaintiffs began making the payments on the mortgage although the account remained in the name of Tyler. There was evidence that defendant knew through its resident agent that plaintiffs had purchased from Tyler and were in fact making the mortgage payments although there had been no record assumption and transfer of the account on defendant's record.
Plaintiffs were delinquent in making payment and were visited by defendant's collector while residing in the house. Plaintiffs told defendant's agent they were considering selling the house and inquired as to the mortgage balance. The agent informed them that the balance was about $15,000 but a pay-off figure would be considerably less. Plaintiffs were told to request the balance and a pay-off figure from defendant's office in Tampa, Florida.
In June 1977, plaintiffs listed the house for sale with Lovejoy, a real estate broker. Believing the pay-off on the mortgage to be approximately $9,500, and desiring to clear approximately $10,000 from the sale, plaintiff listed the house for sale at a price of $19,500. In the meantime, inquiry was made of defendant's office in Tampa as to the balance owed on the mortgage and the amount for which it could be paid off.
Plaintiffs received a letter from defendant dated June 28, 1977. That letter was in body as follows:
 "We are pleased to advise that the amount necessary to pay this account in full is $1,871.71.
 The out-standing balance on this account, including any unpaid insurance premiums is $10,389.00; however, a discount in the amount of $8,517.29 is being allowed for prepayment, which makes the net amount due $1,871.71.
 This payoff will be good until July 31, 1977 after which time a new payoff will have to be quoted. Please let us hear from you on or before that date." (Plaintiffs' Exhibit 1.)
Prior to receiving the letter, there had been no prospects for sale of the house for the list price of $19,500. After receiving the letter indicating a pay-off of only $1,871.71, plaintiffs reduced their list price to $14,900. On July 19, 1977, a contract of sale at that price was executed with a purchaser.
There was a delay in closing the sale beyond July 31. The agent therefore requested a new pay-off figure from defendant. He received a letter from defendant dated August 2, 1977, stating the unpaid balance to be $15,334.80, with a pay-off of $9,651.78. The purchaser insisted on adherence to the contract of sale at the agreed price of $14,900. Plaintiffs acquiesced. They paid defendant $9,651.78 and defendant satisfied the mortgage. Plaintiffs had remaining $5,200 and owed the real estate agent a fee of $1,490.
The testimony of defendant was that the letter of June 28 contained misrepresentations of the true state of its mortgage due to a computer error and that such error was innocently made. That testimony is not disputed. However, under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. International Resorts,Inc. v. Lambert, 350 So.2d 391 (Ala. 1977).
Defendant's first issue on appeal is the contention that no action could lie upon the representations of the letter of June 28 because it was merely an offer made without consideration and expired before acceptance by plaintiffs. The theory of defendant that the principle of nudum pactum is a defense to plaintiffs' suit does not apply. Plaintiffs' action is not upon a contract and is not founded upon a contractual relationship. It is not necessary to an *Page 736 
action for misrepresentation that there be a contractual relationship between the representor and the person deceived.Standard Oil Co. v. Johnson, 276 Ala. 578, 165 So.2d 361
(1964).
The second issue presented by the defendant is that the award of damages is unsupported by the evidence.
Plaintiffs' evidence was that they were informed by the agent of defendant at the time they first considered selling, that the pay-off on the mortgage was probably around $9,500. They considered they had to net $10,000 if they sold. Therefore, they originally listed the house at $19,500. There were no buyers at that price. When they received the letter showing a pay-off on the mortgage at only $1,871.71, they immediately offered the house for sale at $14,900. The real estate agent testified that $14,900 was a fair market price. They sold it at that price. There is no support in the evidence that plaintiffs suffered damages because they reduced the price of the house. The price received was indisputably a fair market value. No evidence was presented that the house would have sold for more. Therefore, if plaintiffs suffered damages, they arose from a decision to sell at $14,900, made in reliance upon the representation of defendant that they could satisfy the mortgage for $1,871.71.
There is no dispute that defendant made the representation, and that it was an erroneous representation. If plaintiffs relied upon that false representation, reasonably believing it to be correct and because of such belief sold their home, they were entitled to recover damages suffered. The answers to these issues were properly given by the jury. Mid-State Homes, Inc.v. Holt, 52 Ala. App. 415, 293 So.2d 476 (1974).[1] The jury found liability in this case. The question presented is as to the basis for the award of damage.
The measure of damage must be the difference between the amount represented as a pay-off in the letter of June 28 and the amount plaintiffs actually were required to pay defendant in order to fulfill their contract of sale. The first was $1,871.71. The latter was $9,651.78. The difference is $7,780.07. Deducting the odd cents, we have the amount set by the jury. The standard for measuring damages in fraud cases has been met. Fogleman v. National Surety Co., 222 Ala. 265,132 So. 317 (1931). The verdict and judgment below are affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.
[1] Defendant has not raised by this appeal any issue that there was not evidence for the jury to find a verdict for defendant on the basic question of liability but only that it failed to establish damage.